IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANNE E. SCHEURER,

                Plaintiff,

v.

FROMM FAMILY FOODS LLC,

                Defendant.

OPINION & ORDER

15-cv-770-jdp

---

    This is an employment discrimination case in which plaintiff Anne Scheuer alleges that her former supervisor sexually harassed her while she was working at defendant Fromm Family Foods LLC. Scheurer also alleges that after she complained about the harassment, Fromm fired her in retaliation. She has sued Fromm under Title VII of the Civil Rights Act of 1964. But there is a slight complication: Scheuer was actually an employee of a staffing agency, and when she applied to the agency, she signed an application agreement that contained an arbitration provision. Fromm now seeks to invoke that provision and compel Scheuer to arbitrate her Title VII claims. Scheuer opposes the motion because Fromm was not a party to her application agreement with the staffing agency.

    Fromm has not demonstrated that it is entitled to enforce the arbitration provision in Scheurer's application agreement. The court will therefore deny Fromm's motion to compel arbitration.

BACKGROUND

    The court reviews a motion to compel arbitration like a motion for summary judgment. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The court considers all

evidence in the record and draws all reasonable inferences in the light most favorable to Scheurer because she is the non-moving party. *Id.*

In 2013, Scheurer applied to work at Richelieu Foods, Inc., which used Remedy Intelligent Staffing LLC to manage its hiring, payroll, and other human resources tasks. Richelieu and Remedy are not parties to this case. As part of Scheurer's application, she signed an "applicant's agreement." Dkt. 15-2, at 6-9. The agreement provided that Scheurer's employment with Remedy was at-will, and it also included an arbitration provision that required Scheurer to arbitrate any disputes with her "Employer . . . arising out of or relating to [her] employment or the termination of [her] employment." *Id.* at 7. Remedy gave Scheurer an employee handbook that reiterated the arbitration clause.

About a year later, Scheurer's work at Richelieu had ended, and Remedy assigned her to work at Fromm. Scheurer alleges that while she worked at Fromm, her supervisor made unwanted sexually explicit comments to her. Although she complained about this harassment to her coworkers, to other supervisors, and to human resources personnel at Fromm, her complaints went unanswered. Fromm eventually fired Scheurer (which the court construes to mean that Fromm had Remedy terminate her assignment). Scheurer alleges that this termination was in retaliation for her complaints of sexual harassment.

Scheurer filed suit on December 2, 2015, alleging claims under Title VII for sexual harassment and retaliation. Fromm now moves to compel arbitration, arguing that Scheurer's claims are subject to the arbitration clause in the application agreement that she signed.

The court has subject matter jurisdiction over Scheurer's claims pursuant to 28 U.S.C. § 1331, because they arise under federal law.

ANALYSIS

Fromm moves to compel arbitration pursuant to the Federal Arbitration Act (FAA). Although the FAA does not define the standard that district courts must use to determine whether to compel arbitration, federal courts have held that such motions are "reviewed under a summary judgment standard." *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)); *see also Tinder*, 305 F.3d at 735. Because Fromm is moving to compel arbitration, it must demonstrate that the application agreement between Scheurer and Remedy requires Scheurer to arbitrate the claims that she is alleging this case. *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 868 (N.D. Ill. 2008).

Under the FAA, the court will compel arbitration if three conditions are present: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. 9 U.S.C. § 4; *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Federal policy strongly favors arbitration, and "once it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). In this case, Scheurer does not dispute the scope of the arbitration clause or that she has refused to arbitrate. But she disagrees that Fromm can invoke the arbitration provision in her application agreement.

The fact that Fromm is not a party to the agreement would usually mean that Fromm cannot invoke it. *See Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 383 (7th Cir. 2014). "However, the obligation to arbitrate a dispute is not always limited to those who have personally signed an agreement containing such a provision." *Id.* A nonparty may invoke an

arbitration clause if the ordinary principles of state contract law permit it to do so. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Those principles include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* Here, Fromm contends that the principles of equitable estoppel and third-party beneficiary entitle it to compel Scheurer to arbitrate her claims. The court disagrees and will therefore deny Fromm's motion to compel arbitration.

A.  **Equitable estoppel**

The parties have not squarely addressed whether equitable estoppel is governed by state law, federal law, or both.[1] The Supreme Court has held that state law generally applies, *Arthur Andersen*, 556 U.S. at 631, but has not determined whether federal law applies as well, *see In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 896 (N.D. Cal. 2012) (stating that it is not clear whether *Arthur Andersen* meant to overrule federally created arbitration-by-estoppel precedent). Other federal courts in Wisconsin have looked to both state and federal law when considering whether to apply equitable estoppel in the context of a motion to compel arbitration. *See, e.g.*, *Pagan v. Integrity Sol. Servs., Inc.*, 42 F. Supp. 3d 932, 934 (E.D. Wis. 2014). Regardless of the law that applies, the result is the same: Scheurer is not estopped from avoiding arbitration.

Beginning with Wisconsin law, the elements of equitable estoppel are: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance by the other, either in action or non-action; (4) which is to the relying party's detriment. *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶ 33, 291 Wis.

---

[1] Fromm cites only federal law in arguing that equitable estoppel applies, and Scheurer does not address the issue.

4

2d 259, 715 N.W.2d 620 (citations omitted). Nothing in the record suggests that Fromm relied on (or even knew of) the fact that Scheurer had signed an agreement with an arbitration provision when it accepted her assignment from Remedy. And even if the record contained such evidence, Fromm has not shown how its reliance was reasonable, given that it was not a party to the agreement. Thus, under state law, Scheurer would not be estopped from refusing to arbitrate her claims.

Federal law compels the same result. The Seventh Circuit has applied equitable estoppel to prevent nonparties from refusing to arbitrate when they knowingly seek the benefits of a contract containing an arbitration clause. *See Zurich*, 417 F.3d at 688. But this case involves a slightly different arrangement. Scheurer, a party to an agreement with an arbitration provision, has refused to arbitrate her claims against a nonparty that is now trying to invoke the arbitration provision. The Seventh Circuit holds that a plaintiff "cannot rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (citations and internal quotation marks omitted). Thus, "[w]hen a plaintiff relies on the terms of an agreement in its claims against the defendant, she will be equitably estopped from repudiating the arbitration clause of the agreement upon which she relies." *Masters v. Lowe's Home Ctrs., Inc.*, No. 09-cv-255, 2009 WL 1657925, at *3 (S.D. Ill. June 11, 2009) (citing *Hughes Masonry Co.*, 659 F.2d at 841).

In this case, Scheurer's claims against Fromm arise under Title VII, not under the application agreement. She is not alleging that Fromm breached the contract, nor do her claims depend on the existence of an underlying contract. At first blush, the rule from *Hughes Masonry Co.* does not apply: Scheurer is not relying on a contract when it works to her

5

advantage, and then repudiating it when it works to her disadvantage. 659 F.2d at 839. But Fromm presses the point a bit further, arguing that Scheurer's claims will turn on her ability to establish that Fromm is a joint-employer with Remedy. And the application agreement could be relevant to that inquiry. Fromm therefore contends that it would be unfair for Scheurer to argue that Fromm and Remedy are joint-employers for Title VII purposes, and yet repudiate their ties for purposes of avoiding arbitration.

Fromm principally relies on decisions from other circuits that have applied an "inextricably intertwined" standard to determine whether the doctrine of equitable estoppel is available to a party who wants to compel arbitration. *See, e.g.*, *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004).[2] But courts that have adopted this standard have cautioned that it is "often fact specific" and "differ[s] with the circumstances of each case." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (citation and internal quotation marks omitted). Indeed, those courts have had "no occasion to specify the minimum quantum of 'intertwined-ness' required to support a finding of estoppel." *JLM Indus., Inc.*, 387 F.3d at 177 (citations omitted). Despite different phrasing, the "inextricably intertwined" approach that Fromm proposes differs little, if at all, from the Seventh Circuit's rule in *Hughes Masonry Co.*: the critical issue is whether a plaintiff's claims are connected to an underlying contract that contains an arbitration clause.

Scheurer's application agreement is not intertwined with her Title VII claims. To prevail in this case, Scheurer will have to establish that Fromm was her "employer," as Title VII defines the term. *See* 42 U.S.C. § 2000e(b). Scheurer's application agreement could

---

[2] Fromm misquotes *JLM Industries* in its brief and incorrectly cites the case as a Seventh Circuit decision. *See* Dkt. 15, at 9.

inform this inquiry, which "look[s] to the 'economic realities' of the relationship and the degree of control the employer exercises over the alleged employee." *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991) (citations and internal quotation marks omitted).[3] But the agreement would not definitively resolve the issue. And, ultimately, Fromm's liability in this case will turn on whether it discriminated against Scheurer on the basis of sex, and on whether it retaliated against her, not on whether it breached a provision of the application agreement.

Scheurer's application agreement is not inextricably intertwined with her claims in this case. Nor is Scheurer trying to take advantage of some parts of the agreement while disavowing others. Under these circumstances, Scheurer is not equitably estopped from refusing to arbitrate her claims against Fromm.

## B. Third-party beneficiary

Fromm also seeks to compel arbitration under the theory of third-party beneficiary. The court looks to state law to determine whether this theory allows Fromm to force Scheurer to arbitrate her Title VII claims. *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005).

Wisconsin law recognizes the doctrine of third-party beneficiary. *See, e.g., Christnacht v. Dep't of Indus., Labor & Human Relations*, 68 Wis. 2d 445, 228 N.W.2d 690, 695 (1975) (citation omitted). For Fromm to qualify as a third-party beneficiary, the application agreement must indicate that Remedy and Scheuer specifically intended the agreement to

---

[3] The court would undertake a similar inquiry if Scheurer pursues a "joint-employer" approach. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008) ("[A]n affiliated corporation nevertheless may be considered an employer under Title VII, in addition to the direct employer, if the affiliate directed the discriminatory act, practice, or policy of which the employee is complaining." (citations and internal quotation marks omitted)).

benefit Fromm or a class to which Fromm belongs. *See Milwaukee Area Tech. Coll. v. Frontier Adjusters of Milwaukee*, 2008 WI App 76, ¶ 20, 312 Wis. 2d 360, 752 N.W.2d 396. Intent can be established by specific language in the application agreement or by the totality of the circumstances. *See Becker v. Crispell-Snyder, Inc.*, 2009 WI App 24, ¶¶ 11, 14, 316 Wis. 2d 359, 763 N.W.2d 192 (citations omitted).

In this case, the language of the arbitration clause states that Scheurer and "Employer" agree to submit all claims arising out of or relating to Scheurer's employment to arbitration. Dkt. 15-2, at 7. But the agreement does not define "Employer," which creates uncertainty about whether the parties intended for the arbitration provision to apply to Remedy's clients. Although the term could refer to Remedy *and* its clients, other portions of the application agreement contradict that reading. For example, Scheurer "agree[d] to have any of the statements [in her application] checked by the Employer," and she "authorize[d] the Employer to contact any and all of [her] references." *Id.* The point of a staffing agency is to handle these sorts of tasks and then assign qualified candidates to positions for the agency's clients. Thus, it would be odd for an application agreement to authorize those clients to conduct the same review that they pay Remedy to conduct. The contract also specifically refers to Scheurer's "employment *at Remedy Intelligent Staffing*," *id.* at 6 (emphasis added), which further suggests that "Employer" refers only to Remedy. Finally, the contract states that if Scheurer believes that she has been sexually harassed "by a co-worker, supervisor, agent of Remedy . . . or a *customer*," then she should report it immediately. *Id.* at 7 (emphasis added). The addition of "customer" in this provision undermines Fromm's argument that the arbitration provision—which does not have the term—refers to Remedy

and its clients. From the language of the contract, the court cannot conclude that the parties intended for Fromm to be a third-party beneficiary of the application agreement.

Fromm also argues that the nature of Remedy's business as a temporary staffing agency means that virtually all of Scheurer's disputes would involve Remedy's clients. According to Fromm, the totality of the circumstances therefore indicates that the parties intended for the arbitration agreement to benefit a class that includes Fromm. But Fromm has not identified evidence that supports this contention. As explained above, the language of the contract does not suggest that Scheurer and Remedy meant for their agreement to apply to Remedy's clients. Like the application agreement, the employee handbook that Remedy gave Scheurer uses the term "Employer" and fails to define the term. It also states that Scheurer should contact the "President of the Employer (Mr. D. Stephen Sorensen)" as part of the informal process for resolving grievances. Dkt. 15-3, at 2. Identifying a specific person as "President of the Employer" undercuts the idea that "Employer" refers to Remedy and its clients. The totality of the circumstances in this case does not support the conclusion that Remedy and Scheurer intended for the application agreement to benefit a class that included Fromm.

Because the record does not support a theory of equitable estoppel or third-party beneficiary, the court will deny Fromm's motion to compel arbitration.

ORDER

IT IS ORDERED that defendant Fromm Family Foods LLC's motion to compel arbitration, Dkt. 14, is DENIED.

Entered August 18, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge